CREATH *et al.*, Plaintiffs in Error, *vs.* SMITH & ATKINS, Defendants in Error.

1. A bill of review for errors apparent on the face of the record, will not lie after the time when a writ of error could be brought.
2. In this state, a decree against infants, divesting their title to real estate, is not erroneous, because no day is given them after coming of age to show cause against it. (SCOTT, J., dissenting.)

*Error to Wayne Circuit Court.*

This was a bill of review filed in 1851, by the heirs of William Creath, to reverse a decree rendered against them in 1840, upon a bill in chancery, filed by Zenas Smith.

The original bill, upon which the decree complained of was rendered, set forth substantially that Smith, the complainant therein, and William Creath, in his life time, were partners in .business ; that Smith having advanced more stock in trade than Creath, the latter conveyed to the firm certain real estate to be used as stock ; that aftewards, said Smith & Creath purchased with partnership funds, and received in payment of debts, other real estate ; that all of said real estate was entered upon the books of the firm as partnership property, and it was agreed between them that it should be held and treated as such ; that, at the death of Creath, the firm was largely indebted, and that the indebtedness could not be discharged unless the said real estate was applied to that purpose. The complainant, Smith, prayed the court to decree that the real estate be sold, and that the proceeds, (after deducting such sum as might be assigned to the widow of Creath for her dower, unless the same could be set apart to her before the sale) be applied to the payment of the partnership liabilities. The widow and minor heirs of William Creath, and James A. Atkins, his administrator, were made defendants. The court appointed Atkins guardian *ad litem* of the minor heirs. He appeared and answered as guardian and also as administrator,

admitting the allegations of the bill and consenting to a decree according to its prayer. His answer was not sworn to. The widow also filed an answer not sworn to, admitting the allegations of the bill, and accepting such portion of the real estate as might be set apart to her for her dower, or if the real estate could not be divided, such portion of the proceeds as might be assigned to her in lieu thereof. In October, 1840, the court, upon the bill, answer and exhibits, without further proof, decreed that the real estate be sold by a trustee appointed for that purpose, and that the proceeds, (after deducting the widow's dower,) be placed in the hands of Smith, the surviving partner, to be accounted for as partnership effects. The real estate was sold pursuant to the decree, and at the sale, Smith and Atkins became the purchasers. They afterwards received conveyances from the trustee for the portions purchased by them respectively. The trustee made report of his proceedings to the court, and they were approved.

In the present bill of review, the widow (who has since intermarried) and heirs of Creath seek to have the decree upon the original bill reversed, and the proceedings thereunder annulled. They state that the real estate was not needed to pay the partnership debts, that Smith had never accounted for the proceeds thereof, and that the widow had never received the sum assigned to her in lieu of dower. They specify as objections to the decree, that it was made absolute against minors, without giving them a day after coming of age to show cause against it; that the bill contained no sufficient allegations to justify it; that it was rendered upon the bill, answers and exhibits without any proof; that the answers of Atkins, as guardian and administrator, were not sworn to; and that a decree could not be rendered against minors upon the consent of their guardian.

A demurrer filed to the bill of review being sustained, the complainants sued out this writ of error.

*E. & B. Bates* and *T. Polk*, for plaintiffs in error, among other points, relied upon the following: An infant is entitled

Creath *v.* Smith.

to a day after coming of age to show cause against a decree affecting his inheritance, " according to the rules, usage and practice of courts of equity," both English and American. (R. C. 1835, p. 506, §1. *Ruby* v. *Strother*, 11 Mo. Rep. 417. 14 Cond. Eng. Ch. Rep. (2d part,) 160. 1 Harr. Chan. 425. *Richmond* v. *Taylor*, 1 P. W'ms, 737. *Gregor* v. *Molesworth*, 2 Vesey, 109. Per Lord Eldon, in *Perry* v. *Phelin*, 17 Ves. 178. 2 P. W'ms, 401. 1 Story's Eq. 606, §652. Story's Eq. Pl. 322, §405. *Pope* v. *Le Mastre*, 5 Litt. 77. *Buler* v. *Bullet*, 4 Bibb, 11. *Williams* v. *Stratton*, 10 Sm. & M. (Miss.) 418. Id. 428. 1 Dessaus. 201. 1 Dessaus. 109. *Lamar* v. *Jones*, 3 Harr. & McH. 328. 1 Tenn. Rep. 79.)

*Glover & Richardson*, for defendants in error, among other points, argued that the omission of the clause in the decree giving day to the infant defendants, after coming of age, to show cause against it, did not render it erroneous. They insisted that the rule which required a day to be given in the decree *in any case* was an anomaly, and not founded in good reason, and that, admitting the general rule, the present case was an exception to it, as the infants were not required to execute any conveyance. They cited the following authorities upon this point. (8 Cond. Eng. Ch. Rep. 58. 2 Mylne & Keen, 409. 15 Mo. Rep. 394. 1 P. W'ms, 736. 1 Vernon, 295. 2 Vernon, 429. 1 Ves. & Bea. 223. *Goodier* v. *Ashton*, 18 Vesey. 4 Henn. & Munf. 450. Ambler, 419. 3 Dessaus. 18, 19, 20, 21. 2 J. C. R. 485. 3 J. C. R. 367.)

GAMBLE, Judge, delivered the opinion of the court.

1. The complainants in this case have filed their bill of review, seeking to reverse a decree made in 1840. The present bill was filed in 1851. There are several errors alleged to exist in the original decree, which need no extended notice, because, if they be admitted to exist, the limitation applicable to such reviews would prevent their being examined in this proceeding.

A bill of review, for errors apparent on the face of the record, will not lie after the time when a writ of error could be brought ; for courts of equity, in this particular, govern themselves by the analogy of the common law, in regard to writs of error : Story's Equity Pleadings, 326. The statute has limited the prosecution of writs of error to five years after the rendition of any judgment complained of. Rev. Code, 1845. The same provision existed in the code of 1835.

2. There is one error assigned which probably is not withdrawn from the consideration of the court by the statute, which is, that the decree affects the inheritance of the present complainants, (defendants in the first suit,) who were then minors, and gives them no day after their majority for showing cause against the decree. The reason why this error, if it be one, is not cured by limitation is, that, if the due course of proceeding required that a day should be given, then there must have been the service of a subpoena upon the infant defendants after they came of age, to show cause against the decree, before it would become absolutely conclusive upon them, and therefore the limitation, on a bill of review, would not commence from the mere rendition of the decree. It is of importance to many titles in this State, that this question of the effect of not giving day in a decree against infants, should be settled, for, doubtless, there are many decrees in which no day has been given.

This question was considered by two of the judges of this court, and decided in *Hendricks* v. *McLean*, 18 Mo. Rep. 32, and the conclusion there pronounced was at variance with an intimation given in *Ruby* v. *Strother*, 11 Mo. Rep. 422. In the present case, as the same two judges alone concur in pronouncing the same judgment, the opinion will only be directed to the presentation of some additional views upon the question.

In what cases, then, was it necessary, according to the practice in chancery in England, to give day to an infant after he came of age, to show cause against the decree rendered against him in his minority ? It is agreed in all the authorities that,

wherever a decree requires a conveyance to be made by a defendant who is at the time an infant, he shall have a day after attaining his full age, to show cause against the decree. It is also clear that, in a decree of strict foreclosure of a mortgage, which terminates the defendant's right to redeem, an infant defendant shall have a day given him. The first class embraces the great majority of cases reported in the English books, in which the necessity of giving a day has been maintained. In *Whitechurch* v. *Whitechurch*, 9 Mod. 125, it is said : " The court was clear in opinion that the decree should be final, for that, in cases of trusts, infants are always bound by decrees of this court, and so they are where the will of the ancestor is contested ; and it is either set aside or confirmed in equity after trial of an issue *devisavit vel non,* or where it is otherwise set aside at law ; and there is scarce any case, where an infant hath time to show cause against a decree, but where it is necessary for him to join in a conveyance in order to complete the estate, and where such conveyance is of the inheritance, as in decrees of foreclosure of mortgages." Lord Hardwicke, in *Sheffield* v. *The Duchess of Buckingham*, West's Rep. 684, expressed the same views in reference to the necessity of giving day to an infant, confining the practice to cases in which a conveyance, in form or substance, was required from the infant. In *Eyre* v. *The Countess of Shaftesbury*, 2 P. Wm's, 119, it is said that, in all decrees against infants, even in the plainest cases, a day must be given them to show cause, when they come of age ; and this comprehensive language of the Lord Chancellor has often been quoted, as declaring the rule to be universal. But Macpherson, in his treatise on Infants, page 426, says : " That these expressions are too comprehensive, and that, in examining the state of the law before the recent changes, (by act of parliament,) we find the cases in which a day was given, carefully, though not, perhaps, with uniform correctness, distinguished from those in which it was not given." This author seems to regard the rule as properly stated by Lord Hardwicke, in *Sheffield* v. *The Duchess of Buckingham*. In

*Price* v. *Carver*, 3 Mylne & Craig, 163, Lord Cottenham says : " That the decree, (in that case,) in the event of the mortgage not being redeemed, after directing a foreclosure, directs a surrender or conveyance of the legal estate to the plaintiff ;" and then, without considering whether the decree, in the form in which it was made, was correct, he remarks : " That the infant defendants would have had a day to show cause, according to the course hitherto pursued, *the decree being both to foreclose and to procure a conveyance from the infants.*"

In many of the American courts, the rule has been adopted of giving day, apparently without regard to its origin or extent in the English courts. In *Harlan et al.* v. *Barne's Administrator*, 5 Dana, 223, it was held to be necessary to give day to infant defendants to show cause against a decree by which land conveyed to trustees for their use by a voluntary conveyance from their father, who, at the time, was indebted to the plaintiffs under certain judgments, was subjected to sale to satisfy the judgments. The conveyance being of land which was subject to the payment of debts, and being made to hinder and delay creditors, (as is declared in the opinion of the court,) was void as to the complainants. Yet the court say the infant defendants must have day to show cause against the decree. It is obvious that if, in such case, the infants are to have this privilege, it would be difficult to state any relating to real estate in which it must not be given. It is an extreme case. I will not further refer to the many American cases in which this right to show cause is reserved to infant defendants. They are many, and from courts of high authority, although I have seen none which states the principle on which the privilege rests, with any clearness.

Lord Cottenham, in *Price* v. *Carver*, says, that the rule for giving day is not the equivalent in equity for the parol demurring at law. When the parol demurs, nothing is done to affect the infant until he comes of age ; but where day is given to show cause, the decree is made in the minority of the infant, and on his failure to show cause, after being summoned, the

decree becomes absolute. Yet, if the remark made in Macpherson on Infants, 427, that, " exactly co-extensive with the grant of a day to show cause, seems. to be on principle, the right to make a new defence after decree," the decree itself is of but little value. It would be almost as well for the complainant that the parol should have demurred. It is true that it is said that, when day. is given in a decree foreclosing a mortgage, that the infant, in showing cause, is not at liberty to go into the accounts, but is confined to showing error on the face of the decree, yet this is manifestly an exception to the general rule.

Now how is our law on this question? The codes of 1845, 1835 and 1825 provide, "That, in all cases where adequate relief cannot be had in the course of proceeding at law, the several courts in this state having chancery jurisdiction shall have power to proceed therein, according to the rules, usages and practice in courts of equity." Yet, chancery jurisdiction does not originate in the statutes found in either of these codes. The act of October 26, 1810, (1 Terr. Laws, 239,) vested chancery jurisdiction in the general court, and this before the common law, as a system, was introduced by statute. It may be said that the terms employed in this early act must be understood as introducing the English chancery modes of proceeding, because we look to that country for the distinction between proceedings at law and proceedings in chancery, although, at the date of the act, the common law was not introduced expressly by statute. There may be force in this view of the meaning of the act, but for the present, the only object in referring to this first act is, to show that the language employed in the subsequent codes has no peculiar meaning, when considering the present question.

If we examine the legislation of the state and of the preceding territorial government, we will see that the disposition of the estates of infants in most of the cases in which day was given in the equity courts of England, was made without any delay, and without the idea being entertained that the case was

to be opened when the infant attained his majority. In cases of foreclosure of a mortgage, the universal practice has been, since the act of 1807, to foreclose and sell the estate under statutes, without regard to the fact that the heir of the mortgagor was an infant. In the specific execution of contracts for the conveyance of land, and in all other cases in which, according to the usage and course of chancery, the court could decree a conveyance of real estate or delivery of personal property, the court, under the act of 22d January, 1816, (1 Terr. Laws, 451, sec. 2,) was *required* to decree that the estate pass from the defendant to the complainant *absolutely*, and the decree was to be recorded as a conveyance within one year after it was made. The same provisions are contained substantially in the subsequent acts regulating practice in chancery, except that the court is left at liberty to decree that a conveyance be executed or that the title pass. But in all, the decree is required to be recorded within a limited time after it is rendered. In the language of these acts, no distinction is made between infants and adult defendants, and the fact that the decree is to be recorded within a limited period, shows that the meaning of the act is, that the decree passes the title without any subsequent litigation. It is true that the code of 1825 makes provision for a proceeding in the court of chancery against the *executor or administrator* of a party who has contracted to convey real estate, and died without making the conveyance, in which the court is directed upon being satisfied that a decree for the specific execution ought to be made to make such decree, " saving to infants, married women, persons of unsound mind, and persons absent from the United States the term of five years after their respective disabilities are removed, to appear and file their petition or bill of review, to set aside such decree for fraud, collusion, or other cause." The decree thus made was to be carried into effect by a conveyance from the executor or administrator. The same provisions in substance are contained in the subsequent codes, except that the proceeding may be had in the county court. In the proceeding authorized

Creath *v.* Smith.

by these acts, the heirs are not parties. The defendants are executors or administrators. The saving clause in the decree, which comprehends adults absent from the United States, as well as infants, married women and persons of unsound mind, has no analogy to the clause in a decree giving day to an infant defendant to show cause.

In Missouri, both before and since she became a state, the real estate which descended to an heir has been subject to sale on the application of an executor, administrator or creditor to satisfy debts, and in this proceeding, the title of the heir is completely and absolutely divested, without regard to the character or dignity of the debts. The real estate of an infant has always been subject to sale for his support or education, upon the application of his guardian to the inferior court having jurisdiction of such cases.

In the case now before the court, the original bill which was filed against the complainants in this bill of review, alleged that Creath, the ancestor of the complainants, was a partner in trade with Smith; that he conveyed to the firm, as a part of its stock, certain real estate, to be used as stock; that other real estate was taken in payment of debts due to the firm; that this real estate was entered in the books of the firm as partnership property; that there are debts of the firm, which cannot be paid without the application of this real estate. The bill then prays for a decree for the sale of the property by a commissioner to be appointed by the court. This rapid statement is made merely to show the nature of the proceeding.

The decree directs the sale of the estate by a commissioner named, and the terms. The sale was made, reported and approved, and the commissioner made the conveyances.

In the opinion of the court, the decree was not erroneous, because of a failure to give day to the infant defendants. The rule, as stated in *Whitechurch* v. *Whitechurch*, and by Lord Hardwicke, in *Sheffield* v. *The Duchess of Buckingham*, is the rule which we regard as the true rule in the English practice, and it will be seen, by reference to our own statutes, that

that rule is not applicable here, or that our statutes are not framed upon the idea that such rule should prevail. The English parliament has lately interposed, and by 1 Will. IV, c. 47, §11, has authorized the courts of equity, in some cases, in which conveyances are required to be made by infants, to order the infants to make the conveyances, and has declared that such conveyances shall be as effectual as if the persons were adults.

The judgment of the Circuit Court is, with the concurrence of Judge Ryland, affirmed.

Scott, J. For my views in relation to the question involved in this case, reference is made to the case of *Ruby* v. *Strother*, 11 Mo. Rep. 422. I dissent from the opinion of the majority of the court.