SPECK, Appellant, v. WOHLIEN AND WOLFF, Respondents.

1. Whenever by the rules of equity a party is entitled to have a right to land vested in him, the remedy may be had, in St. Louis county, in the Land Court.

2. Where a sale of real estate of a decedent has been made under an order of the probate court for the payment of the debts of said intestate's estate upon a petition of the administrators, and the sale has been approved by said court, but the administrators have refused to make a deed of the land sold; *held*, that a court of equity can not compel the administrators to make a deed to the purchaser, nor can it, by its decree, vest the title to the land in said purchaser.

3. Where a sale of real estate of a decedent for the payment of debts is approved by the probate court at the same term during which the sale takes place, the, heir, not having notice of such approval, so that he is deprived of his appeal, may call in question such approval in a suit brought against him by the purchaser for a devestiture of title.

*Error to St. Louis Land Court.*

This was a suit instituted by Ann C. Speck, against L. Rudolph Wohlien as·the only heir of Diedrick W. Wohlien, and also of Anna Wohlien, his wife, and against John Wolff, as the surviving administrator of the said Diedrick W. Wohlien. Plaintiff, in her petition, prayed that the title to a certain lot, situate in the St. Louis common, might be vested in her, the said plaintiff.

The facts, as they appeared in proof on the trial, are as follows : The city of St. Louis, by deed dated May 22d, 1842, demised to Diedrich W. Wohlien lot No. 5, in block No. 14, of the St. Louis common, containing 3 57-100 acres, at an annual rent of $45 52; that being five per cent. upon the amount bid ($910 35) for said lot by him at a public sale. Wohlien had the privilege of at any time paying the amount of his bid, and upon so doing would have been entitled to receive a fee simple deed from the city. At the end of fifty years from the sale, and at the end of every fifty years thereafter, the lot was to be valued, and the said Wohlien was to pay as a yearly rent thereafter five per cent. upon such valuation.

The said D. W. Wohlien died about August 13th, 1842, leaving the respondent, L. Rudolph Wohlien, his only heir. His widow, Anna Wohlien, and the respondent, John Wolff, administered on his estate. At the December term, 1844, of the St. Louis Probate Court, said administrators presented their petition for the sale of so much of the real estate of their intestate as would pay the remaining debts due from his estate. Afterwards, all the steps required by law having been duly taken, said court, at its March term, 1845, ordered the real estate of the deceased, mentioned in the said petition, and as a part thereof the above described lot, to be sold on the first Monday of June, at the succeeding June term of said court. Said lot was duly appraised and was valued " at the sum of $1500 for the fee of the same, the purchase price of the same—$910 35— being yet due to the city, which is included."

On the day appointed in the order, to-wit, June 2d, 1845, all the requisites of the law having been complied with, all the right, title and interest of the intestate, in and to the lot in controversy, was duly exposed for sale. It was fully made known and explained to the bidders and others present at the sale, that there was due to the city on said lot the sum of $910 35, that being the amount of the bid made by the intestate, on which the annual interest, at five per cent., amounting to $45 52, was payable to the city in lieu of rent; that the annual interest, $45 52, for the year ending May 2d, 1845, was still due to the city and unpaid; that these sums would have to be paid by the purchaser. At this sale, the said Anna Wohlien, one of the administrators, being the highest and best bidder, became the purchaser of said lot, it being stricken off to her at the price and sum of $420. The said administrators made a report of this sale to the probate court, June 6th, 1845, and on the same day said sale was approved by said court.

It was in evidence that in the settlement of said administrators with the probate court, at its September term, 1846, among the items of debit against their intestate's estate there

was the following: "Interest to city on real estate from May 2d, 1844, to May 2d, 1845, No. 2, $47 32."

It was also in evidence that the sum bid by the said Anna Wohlien, to-wit, $420, was duly paid by her ; that the rent or interest due the city was paid by her, January 7th, 1846 ; that if the said rent was charged by said administrators against the estate of their intestate, it was a mistake ; that a final settlement of the estate of the said Diedrich W. Wohlien was made March 25th, 1848, and the administrators were discharged.

No deed was ever made by the said Wolff to his co-administratrix, the said Anna Wohlien, although the same was demanded soon after the sale by the said Anna. A deed from the said Wolff, joined in by herself, as administratrix, was also demanded, but none was ever made.

In the year 1846, after the said sale, the said Anna Wohlien executed a deed of relinquishment to the city of St. Louis of said lot, and received in return from the city a conveyance in fee simple of the same. She afterwards, on the 16th of January, 1846, sold and conveyed the said lot to the appellant, Ann C. Speck. She died in 1849, leaving the respondent, L. Rudolph Wohlien, her only heir at law.

The court below decided that it had no jurisdiction to order or decree a conveyance of the lot in controversy by either of the defendants, L. R. Wohlien and J. Wolff; nor to vest in plaintiff, by its own decree, any right, title or interest which the said D. W. Wohlien had in said lot. Thereupon, plaintiff took a nonsuit, with leave to move to set the same aside, and a motion to that effect having been made and overruled, the case is brought here by appeal.

*T. Polk*, for appellant. 1. The Land Court had jurisdiction of this case, and had power to give the relief prayed for. (Sess. Acts, 1853, p. 90 ; Code of Practice, art. I, § 1 and 2, and art. II, § 1 ; R. C. 1845, p. 38–50, 634, 330, 331 ; Overton v. McFarland, 15 Mo. 315 ; Miller v. Woodward, 8 Mo. 171 ; 9 Mo. 339 ; R. C. 1835, p. 156 ; 15 Mo. 225 ; 1

Story Eq. 529.) 2. The Land Court then having jurisdiction, the plaintiff is entitled to the relief sought. The sale of the lot in controversy was made after all the requisites of the law had been complied with, and having been approved by the court, Anna Wohlien, the purchaser, was entitled to have the title to the lot in question vested in her, and her co-administrator ought to have made her a deed conveying the same to her. He is the proper person to make the deed. (R. C. 1835, p. 53, § 22 ; Sess. Acts, 1851, p. 210, § 2.) But the question is not so much who ought to make the deed, as has appellant a right to the land. She clearly has. The heir and distributee has therefore been made a party. If it be maintained that the power of the administrator to make a deed is a statutory power, and that therefore the Land Court can not interfere with it, it is answered that this is not a case of a defective execution of a power. The execution of the power has here been carried to a certain point, and then stopped without cause and against right. The object of this suit is to have the execution carried forward and completed. The purchaser has done all on her part that she was required to do. In the case of Moreau v. Detchmendy, 18 Mo. 522, there was a *defective* execution of a statutory power. The same is true of the case of Bright v. Boyd, 1 Sto. 486. (See Chance on Powers, 54, 543 ; Alexander v. Merry, 9 Mo. 514.) 3. If it be objected that the land in controversy did not sell for three-fourths of its appraised value, and that therefore the sale was improperly approved, it is answered that the approval by the probate court of said sale has settled that question forever. Whether the court ought to have approved of the sale can not be inquired into collaterally, as in this case. (See 4 Wend. 436 ; 12 id. 533 ; 8 Metcalf, 361 ; 2 Raw. 287 ; 2 Penn. 321 ; 8 Verm. 368 ; 11 S. & R. 422 ; 10 Pet. 473 ; 2 How. 319 ; 2 Pet. 169 ; 16 Mo. 21 ; 19 Mo. 96, 621.) The lot was however sold at three-fourths of the appraised value. 4. The objection that the report of the sale ought to have been made by the administrators to the next September term of the probate court, and not to the same

June term during which the land was sold, is answered by saying that this is a matter that can not be reached collaterally in this suit. It could be reached only by appeal. (R. C. 1845, p. 106 ; 2 Verm. 253 ; 2 Green's Ch. R. 147 ; 16 Mo. 9.) Wolff, the co-administrator, could have enforced the sale against Mrs. Wohlien in a court of equity, by a bill for specific performance. (2 Green's Ch. R. 156-165 ; 2 Sto. Eq. p. 87 ; 6 Wheat. 528.)

*Field* and *Gibson*, for respondents.*

Scott, Judge, delivered the opinion of the court.

As to the question whether the Land Court has jurisdiction to afford the relief asked by the plaintiff, we are of opinion that if a case had been made which would have warranted the equitable relief sought by the plaintiff, the Land Court would have been the proper tribunal to hear and determine the cause. We understand that wherever, by the rules of equity, a party is entitled to have a right to land vested in him, the remedy may be had in the Land Court. It is a mistake to suppose that the mere fact of a final settlement of an estate having been made in the county court, of itself gives a party a claim to relief that he would not otherwise have. Where estates have been settled and distribution made, this court has allowed one having a claim against an estate to come into equity for relief in the first instance, making the personal representatives, heirs and distributees parties, without having his demand first established in a court of law or county court. The Land Court has no jurisdiction of this case in the same sense that no other would have had jurisdiction, because the plaintiff did not show herself entitled to the relief she sought in the way in which it was asserted.

When Wohlien, the father, died, the lot in dispute descended to his son, one of the defendants. Instead of suing the heir

---

* There is no brief on file on the part of respondents, and therefore it is not attempted to set forth the line of argument pursued.

or devisee, our law gives a power to the administrator or executor to sell the lands of a deceased person for the payment of his debts by conforming to the regulations prescribed by the statute. To this proceeding the heir is no party except so far as he pleases to make himself one, though he is bound by it when the regular legal steps have been taken to divest his estate. Now an order is made for the sale of a decedent's land for the payment of his debts. For some reason or other the party purchasing under the order of sale fails to obtain a title to the land he purchased. On what principle can the purchaser call on the heir to perfect his title? What is the difference between the heir and the debtor in an execution? May not the heir say that he has had nothing to do with the matter; that no act of his had been an inducement to the purchaser; that the law allowing a sale of his inheritance prescribes a way by which the purchaser may obtain a deed; he has therefore no right to call upon him for aid, as by no act or demand of his was the purchaser in the situation of which he complains. There is a large class of cases in which third persons are vested with a power to sell the lands of others, and it is no easy matter to distinguish, in principle, this case from any other of that class. An affirmance of the right to relief in this case would, in effect, overthrow the principle that courts of equity will not relieve against a defective execution of a legal or statutory power — a consequence which no one can contemplate without being struck with the inconvenience which may follow from it. The case of Bright v. Boyd, (1 Story's Rep. 478,) is in point on this subject, and that, too, was the case of a sale of land by an administrator. The giving of a bond was a necessary prerequisite to a sale, and the administrator failed to give one. It was held that the omission, whether accidental or not, could not be treated as a mistake or accident remediable in a court of equity; that courts of equity, while they afford relief against a defective execution of a power executed by a private person, yet they can not afford relief against the defective execution of a power created by law, nor dispense with all the ne-

cessary formalities. The same principle is recognized in the case of Moreau v. Detchemendy, (18 Mo. 522,) and applied to a deed executed by a sheriff. In this last case, the instrument was inoperative for want of a seal. There can be no substantial difference between a void instrument which has a mere physical existence and no deed at all. The case of Pottinger v. Pottinger, 2 Green. (N. J.) 157, merely shows that an administrator may enforce a contract made to purchase land at his sale under an order of court. Because courts of equity will not enforce the specific performance of a contract unless there is a mutuality of remedy between them, therefore it is argued that chancery would enforce the contract against the heir. But this does not follow. The mutuality would be confined to the administrator and purchaser, and would not extend to the heir, who had nothing to do with the contract between them. This is said in answer to the argument resting on this case, and is not intended to sanction the law of it. We do not consider that the case of the Heirs of Pratte v. the Heirs of McCullough, (1 McLean's R. 69,) though conflicting with those above cited, as sustaining the plaintiff in her claim to relief. In the case referred to, it would seem that the executor, who alone could make the deed, was dead, and that, perhaps, was the inducement to the opinion, though there seems to be some distinction taken between a defective execution of a power and a defective power, without distinguishing between powers created by law and those deriving their existence from the acts of individuals. The point determined in that case is not in this, and we will express no opinion in relation to it. The petition of the plaintiff states that there is a person in existence from whom she is entitled to a deed, and it does not appear that he has refused it.

The distinction between the case under consideration and that of Frye v. Kimball, (16 Mo.) and similar cases, is obvious. It is one thing to sustain an ancient deed, on which the rights of property repose, against objections which may be urged for its overthrow, and another thing to make a deed, or pass a title

when the same objections are urged as reason why the deed should not be executed or the title pass in the first instance. Deeds every day are sustained against objections, which, if they had been urged as a reason why the deed should not have been executed, would have prevailed.

It is maintained that the approval of the sale can not be questioned in a collateral proceeding. Had the approval been made at the term required by law, there might have been some weight in this proposition. The party affected could then have taken his appeal. But the objection here is, that the approval was made at a time when he was not in court and not required to be there; and as the appeal must be taken at the term at which the approval was made, the party not having notice, and not being present, could not take his appeal. It was held by this court, in the case of Caldwell v. Lockridge, (9 Mo. 358,) and the principle has since been repeatedly recognized, that where an attempt is made to affect a person by a proceeding to which he was no party and of which he had no notice, and from which, therefore, he could not appeal, he may, in a collateral proceeding, treat it as a nullity. In suggesting these considerations respecting the approval, as it now stands before us for our sanction prospectively, we do not wish to be understood as expressing our opinion as to such an approval, already acted upon and consummated in a deed. As before observed, the distinction between the cases is glaring.

We will not undertake to determine whether the defect in the approval may not yet be remedied by the probate court on notice to all those interested, and whether a remedy may not be had otherwise than by a proceeding in the nature of a bill in equity, which we do not think is adapted to obtain the end sought for by the plaintiff.

Judge Ryland concurring, the judgment is affirmed.