Robert v. Casey.

———————

ROBERT & WIFE, Appellants, v. CASEY, Respondent.

1. The seventh section of the "act concerning minors, orphans and guardians," approved February 8, 1825, (R. C. 1825, p. 417,) conferred upon the probate courts power to authorize guardians of minors to sell real estate of such minors at private sale to complete their education.
2. Upon petition of a guardian, under said act, to a probate court for leave to sell real estate of his ward, the court ordered, May 4, 1835, that the guardian, after an appraisal by three disinterested householders, should sell the lot at private sale for not less than three-fourths of its appraised value, and should make report of his proceedings at the next term of the court. After the next term of the court, the guardian made a private sale of the lot for more than the sum at which the lot had been appraised, and executed a deed, dated October 3, 1835, to the purchaser; but he made no report whatever to the court of the sale or of his proceedings under the order. *Held*, that the failure of the guardian to make report of the sale and proceedings under the order would not invalidate the title of the purchaser, the said act of February 8,

1825, not requiring an approval of such sale by the probate court; nor would the fact, that the sale was made subsequent to the term at which the guardian was directed to report his proceedings under the order, invalidate the sale.

3. The original affidavit of the appraisers, and their written appraisement, and the deed of the guardian, though never reported to the court, are admissible in evidence to show the proceedings of the guardian under the order of the probate court.

*Appeal from St. Louis Land Court.*

The facts sufficiently appear in the opinion of the court.

*Whittlesey*, for appellants.

I. The records of the county court, and the approval by said court of the proceedings of the guardian under the order, are the only competent evidence to show that the order of court has been complied with, and parol testimony can not be resorted to until it is shown that record testimony has been lost. In courts of limited jurisdiction proceeding contrary to the course of the common law, the records are the proper evidence to show that the requisites of the law have been complied with. (Vallé v. Fleming, 19 Mo. 454; Medlin v. Pratte, 8 Mo. 235; Milan v. Pemberton, 12 Mo. 598; Danzey v. Swinney, 7 Texas, 617; Burnett v. Higgins, 4 Dana, 565, 567; Griffith v. Dicken, 4 Dana, 561; Planters' Bank v. Johnson, 7 Sm. & M. 449; 23 Mo. 30; 7 J. R. 19; 6 J. R. 9.)

II. The sale was void and the deed passed no title, because the court did not approve of the same, no return being made by the guardian as required by the order. It is admitted that, independent of statutes, sales made under orders of courts of general jurisdiction, if regular and made in proper time, pass the title, without any return under the order. But in this case the statute and the order of court both required that return and the approval of the sale when made. The county court was not a common law court, and had only limited as distinguished from general jurisdiction; it was a creature of statute entirely. At common law, the real estate of an infant can not be sold, nor will a court of chancery do

Robert v. Casey.

it, although it may be for the benefit of the infant. (Calvert v. Godfrey, 6 Beav. 97; Garmston v. Gaunt, 9 Law Jurist, 78.) The authority of the county court and its process are regulated by the statute. An appeal lies from the judgment of the court confirming a sale by an administrator; (Speck v. Wohlien, 22 Mo. 310;) and appeals lie, in the cases of guardians and wards, as in other cases cognizable in the probate courts. If no report is necessary, and the court is not required to confirm that report to make the sale valid, and no report is made, how can an appeal be taken? But if the statute did not require this report, the county court justly exercised its powers in requiring the report, so that the proceedings might appear of record showing how the minor's title was divested; and what must appear of record may not be proved by parol. (See cases cited above; also Jenner v. Joliffe, 6 Johns. 9; Brush v. Taggart, 7 Johns. 19; 4 Dana, 565.) The court chose to retain authority over its own process, and to know whether the sale was for the benefit of the infant, who finds no record of a sale, and might well suppose that the power given by the order had not been executed.

III. The court had authority over its own process to order the report to be made at the next term; and as the sale was made after the process was returnable, the authority to sell had ceased, and the sale and deed were consequently void. The powers of the probate court were transferred to the county court by act of 1827. (See 2 Terr. Laws, p. 127.) By the acts of 1825, p. 272, § 13, the terms of the county courts were to be four in each year, and to be held on the first Mondays of February, May, August and November. The order in this case was made at the May term, 1835, and the report was returnable at the August term, and the sale was made in October (as appears from the deed), nearly two months after the return term of that order. The power had expired, and the sale under it was as void as a sheriff's levy and sale under an expired execution. (Vail v. Livingston, 4 Johns. 450; Devoe v. Elliot, 2 Caines, 143; Jarvis v. Russick, 12 Mo. 63, 67.)

IV. If the power was good at the date of the sale in October, 1835, the deed was void because made in the name of the guardian, instead of his ward. (See authorities in notes to Elwell v. Shaw, 1 Am. L. Cas. 424; Griswold v. Bigelow, 6 Conn. 258; Lockwood v. Sturdevant, 6 Conn. 373, 387.)

———— ————, for respondent.

I. It was contended in a written brief filed at a former term by Mr. Reber, (now judge of St. Louis Court of Common Pleas,) that the act of 1825 (R. C. 1825, p. 417) did not require the guardian to report his sale to the court; that if the court had the implied power to make such an order, a failure of the guardian to execute it could not defeat the title of an honest purchaser who had no control over him. The rule in such case is, where the law requires an act to be done in order to pass the title, there it must be performed or the sale is null. The law requires an administrator's sale to be approved by the court. (19 Mo. 461.) If not approved it is void. So also no title passes by an administrator's sale unless he execute a deed. (18 Mo. 561.) So also the sheriff's return is indispensable to the title of a tenant by elegit. (1 Barn. & Ald. 40.) But an irregularity, in a matter which is not an essential link in the chain of facts which pass title, does not vitiate in a collateral proceeding; as, for instance, a sheriff's failure to return his execution, where he has otherwise conformed to the law and executed, a deed to the purchaser. And yet, where the sheriff's return is *the title* (as in the case of an eligit) there it must be shown. (See Lessee of Stall v. McAlester, 9 Ohio, 19; Wheaton v. Sexton's Lessee, 4 Wheat. 503; Palmer v. Oakley, 2 Dougl. 495.) In all the cases where a report of sale or confirmation is held necessary, it is on account of a statute. (Young v. Keogh, 11 Ill. 642; Rea v. McCachron, 13 Wend. 465; Lessee of Curtis v. Norton, 1 Ohio, 136; 17 Mo. 71, 442.) No confirmation of the sale is required either by the law or by the order under which the sale was made. The duty of the purchaser was performed when he paid the purchase money and re-

ceived his deed. Every thing was regularly done up to that period. The land was sold for more than the appraised value; and the purchaser and those claiming under him have held under the sale for more than twenty years.

NAPTON, Judge, delivered the opinion of the court.

The title of the defendant in this case was derived from a sale by a guardian made in pursuance of an order of the county court of St. Louis county. The law under which the court acted is the seventh section of the act concerning minors, orphans and guardians in the revised code of 1825. (R. C. 1825, p. 417.) That section is as follows: " Sec. 7. Be it further enacted, that it shall be lawful for any guardian of any minor, who is committed to his or her care for tuition, and who has lands or tenements, for the purpose of education, to apply to the court of probate of the proper county for leave to sell the said lands or tenements, or such part thereof as may be necessary to complete the education of such minor, or to mortgage the same for any sum not less than two-thirds of the real value, as the court shall think proper." The remainder of the section, and some subsequent provisions, relate to the duties of the court and of the guardian concerning settlements of the guardian's accounts and the application of the money to the education of the minor. Nothing more is said in the act concerning the authority to sell or the manner in which the authority shall be executed.

The agreed case shows that the order for Turpin to sell the land of his daughter and ward was made at the May term of the county court; that the appraisement was made a few days after the date of the order; and that the deed was executed on the 3d of October of the same year. The objections to this title are, *first*, that the records of the court show no return whatever to the court by the guardian of any action by him under the order, and consequently the court never passed upon or sanctioned the sale, and no title vested until such approval; *secondly*, that the deed was made

after the term of the court to which the guardian was directed to report, and that at this time his power and authority under the order had ceased; and *thirdly*, that the affidavit and appraisement were improperly admitted in evidence.

We think the affidavit and appraisement were properly admitted. They were not matters of record, but proceedings *in pais;* and the principle that a court speaks only by its records is not applicable.

The act of 1825 does not expressly confer upon the county court the power to order a sale, but it does confer the power by necessary implication. There is in the act no restriction upon the kind of sale which the court may order—whether it shall be public or private; nor does the law require that the sale shall be reported to the court or subject to its revision. The order of the court however in this case was, that the guardian should report his proceedings to the next term of the court. The order authorized the guardian to sell the lot at private sale, provided h₃ would have it appraised by three disinterested householders, and could sell for two-thirds of its appraised value. He was then directed to report his proceedings to the court. No report was ever made; nor do the records of the court show that after the order any thing was ever done in relation to this land, its sale, or the proceeds of the sale; nor was any settlement ever made by the guardian, either in relation to this land or any other matter appertaining to his guardianship. It appears, however, from the affidavit and appraisement produced at the trial as original papers and proved, that the lot was appraised as directed by the court, and that the sale was made for about one hundred dollars more than the value at which it was appraised. The purchase money, it is agreed, was paid. The deed of the guardian recited the order of the court and the appraisement, and purported to convey the title of the minor in pursuance of the authority conferred by the order.

The question is whether the failure of the guardian to comply with the order of the court in making report of his sale invalidates the title of the purchaser. If the title of

38—VOL. XXV.

the purchaser depended on the approval and sanction of the court, there could of course be no title anterior to such approval. But here neither the law nor the order of the court makes the title depend upon the sanction of the court. The guardian is authorized to sell, and of course to convey, after he has procured an appraisement, and for a sum not less than a fixed proportion of its appraised value. *Then* he is directed to report his proceedings, not, it would seem, so much with any view that the court should exercise its judgment upon the policy or propriety of the sale generally, but principally to enable the court to pass upon the validity of his acts, so far as previous restraints had been imposed, and to control and direct a proper application of the proceeds. To hold the title of the purchaser dependent upon the return and report of the guardian, is to hold him responsible for a matter over which he has no control. He can look to the order of the court and see whether there is authority to sell, and if so, how far that authority is restricted; but when he sees an order and that the terms, upon which the power to sell depends, have been complied with, he is not responsible for the subsequent misconduct of the guardian. His title can not and ought not to be invalidated by matters happening subsequent to its vesting. We might as well require him to see to the application of the purchase money.

Undoubtedly where a title can not be consummated without certain acts being done and an approval by the court of those acts, the case is different. The sales of administrators under the statute are of this character. But no provision is made in the guardian law of 1825 to secure the supervision of the court over the sale; none which looks to an approval by the court as a preliminary to the purchaser's title.

The deed from the guardian is made in strict conformity to the order of the court, and it is not easy to see how it could have been executed in any other way than it was, in order to convey the title of the ward. It recites the terms of the power and their fulfilment, and purports to pass the interest of the ward by virtue of the power. The Connecticut

cases, to which reference has been made in the argument, are not applicable. (6 Conn. 258; 6 Conn. 373.) In these cases, the administrators, on the face of their deeds, did not profess to convey the interest of the decedent, but their own; and the waranties were against their own acts. Nor is the doctrine concerning attorneys in fact, or the general law of principal and agent, in reference to conveyances, pertinent to the case of a guardian or administrator. (1 American Lea. Cas. 424.) The guardian does not act as agent of his ward, or under a power of attorney from him either express or implied, but he derives his power to sell and convey from the law and the action of the court under the law. If he followed this, and acts under this, his deed is binding upon the ward.

The remaining objection to be considered in this case is the one which denies to the guardian, after the term has lapsed at which he was directed to report, all authority or power to sell. It is said that when the August term of the county court of St. Louis had passed, the authority conferred by the order in May was gone, and the case is likened to a writ which an officer undertakes to execute after the return day has passed. Writs are issued by a clerk at the instance of a party, and their form and time of return are regulated by law. After the return day the writ is but blank paper, and the officer who acts under it is a mere trespasser. In this case the order of the court can not be construed as intending to limit the period within which a sale could be made. It authorizes a private sale, and the only restriction in the order to this authority is, that the lot shall be appraised and the sale shall not be made at a price below two-thirds of its appraised value. It does not in terms declare at what time the sale may be thus made, nor does it appear to be reasonably inferable from its language that there was on the part of the court any intention to compel the guardian to sell immediately or within any given period. He is directed to return his proceedings under the order to the next term; but this would only appear to be a direction that, so soon as a sale

was made, the proceedings should be placed before the court at the first term after such sale. If no sale was made there was nothing to return; and it would hardly have been contended in this case, that if, after the sale in October, the guardian had duly returned a statement of the same, and the sale had been approved and confirmed, the sale would nevertheless have been void because made after the lapse of the first term succeeding the one at which the order was made. The truth is, it does not very clearly appear how the title of the purchaser could have been affected by any action of the court subsequent to the sale, had all the proceedings, as they ought, been properly returned. The order was strictly pursued. The sale was made on the terms directed. What authority had the court to set it aside, if they so desired, and what control could they exercise over it? The act gives them none. They had reserved none in the original order; and it would seem that the only purpose to be accomplished, or that could be attained, by requiring a return, was to enable the court to see that their direction had been followed, and to make such disposition of the purchase money as would forward the objects for which the sale was made. So far as the purchaser is concerned, who had a deed executed after every preliminary step which the law or the order of the court required, it was a matter of perfect indifference whether the guardian complied with his duty in returning the proceedings into court or not. His title was the same with or without a return.

We do not wish to be understood as saying that such an order as the county court made in this case would warrant a guardian at any remote period of time to undertake its execution. Cases might be put in which the lapse of time would be very material, but it is plain that five or six months is no reasonable period for effecting a private sale of land, and that the real injury which the minor has in this case sustained does not arise from the time when the order was executed, but from an entire failure to report its execution, or to account for the money which the sale produced. Whilst

it is to be regretted that such power should ever be confided to a court in such a loose and unconditional manner, or that it should ever be delegated to a guardian in the same unrestricted mode, and whilst it is also probable that the power, thus entrusted by the court in this instance to the guardian, has been grossly abused, we are not, from these considerations, at liberty to annul the title of an honest purchaser acquired more than twenty years ago, based upon the performance of every act on his part, and on that of the guardian, which by law was made a pre-requisite to its validity.

The judgment is affirmed, the other judges concurring.