Strouse v. Drennan et als.

JOHN M. STROUSE, Appellant, v. WILLIAM DRENNAN et als., Respondents.

1. *Courts—Supreme Court—District Court—Practice—Error and Appeals.*— The judgment of the District Court reversing the decision of the Circuit Court may be reviewed upon appeal or writ of error by the Supreme Court. The judgment of the District Court is a final judgment as far as that court is concerned.

2. *Administration—Guardian and Ward—Sales by Guardian—County Court— Jurisdiction.*—Under the statute relating to guardians and curators (R. C. 1845, ch. 73, p. 551, § 22), and the amendatory act of Mar. 3, 1851 (Sess. Acts, p. 217), the County Court has no jurisdiction to order the real estate of the minor to be sold for his support, but only for his proper education. Where the petition filed by the guardian and the order of sale made by the court show that the sale was made for the education as well as the support of the ward, the jurisdiction of the court will be sustained and the sale will not be held void for want of jurisdiction in the court. The act of March 3, 1851, provided that sales of lands by guardians should be advertised and con-ducted in the manner provided for sales of real estate of decedents by exec-utors and administrators. Where it appeared that the sale of the ward's real estate was made by the guardian without an appraisement, and that the report of sale was confirmed at the same term at which the sale was made—*Held*, that the provisions of the statute were not complied with, and that no title passed to the purchaser at the sale by the guardian's deed. County and Probate Courts are courts of limited jurisdiction, and in sales made under their authority it must appear that the provisions of the statute have been complied with, as the same liberal intendment is not extended to their acts as to those of courts of general jurisdiction. It is the duty of a purchaser buying real estate sold by the authority of courts, to look to the order of the court and see whether there is authority to sell, and if so, what are the conditions and restrictions incident to its exercise; he must see that the terms on which the power to sell depends have been complied with ; when this is done, his title will not be vitiated by anything which takes place afterwards.—Petition for rehearing filed and overruled.

*Appeal from the Fifth District Court.*

The guardian's deed was as follows :

" Know all men by these presents, that at the adjourned term of the Probate Court of Platte county, Missouri, in the month of June, in the year 1854, I applied to said court for an order to sell the real estate of George Strouse, deceased, for the education of his minor child, which was granted ; and I, as the guardian of John M. Strouse, the only child and heir of the said deceased, in pursuance to said order of said court, sold to James M. Davis, of Platte county and State aforesaid, for and in consideration of nine hundred and twenty-five dollars to me in hand paid as guardian as aforesaid, the south-west quarter of section number twenty-three (23), in township number fifty-two (52), and range number twenty-four (24), situated in said county of Platte ; which said quarter section of land, by virtue of the power by law in me vested, and all the right, title and interest therein of the said George Strouse at the time of his death, and which has since descended to his heir, for and in consideration of the amount of money aforesaid, I have granted, bargained and sold, and by these presents do give, grant, bargain and sell unto the said James M. Davis, and unto his heirs and assigns forever : To have and hold the premises aforesaid unto the said James M. Davis, and his heirs and assigns forever, free from the heirs of the said George Strouse, deceased, and all others claiming under him. In testimony whereof, I hereunto set my hand and seal this 22d day of July, 1854. Alexander Baker, guardian. [Seal.]"

Duly acknowledged and recorded.

*Doniphan & Carroll*, for appellont.

The only point presented in the court below was that defendant's record showed a proper sale of the property sufficient to convey the fee simple title of the minor's estate. They asked such an instruction and it was refused ; but the court instructed the jury, that Baker, the guardian, had not

fully complied with the law in selling the property. The sale was approved on the 6th day of July, 1854, the same term at which the sale was made. This makes the record show that the law was not complied with in the matter of the sale and the approval, and the sale may be attacked in a collateral proceeding—22 Mo. 310 ; Vallé v. Fleming et al., 19 Mo. 454 ; Knowlton v. Smith, 36 Mo. 513.

The plaintiff here is entitled to treat the sale as a nullity— Caldwell v. Lockridge, 9 Mo. 358, & 22 Mo. 317. This case settles the doctrine that the heir may call in question the sale in a suit by him against the purchaser. Where the administrator's sale is void, the remedy of the heir is to sue for possession—Bank v. White, 23 Mo. 342. A guardian is bound to comply with the statutory provisions affecting his duty in discharge of his trust—Finney v. State, 9 Mo. 227.

This sale was made under the act of 1851 (see p. 217), and it had to be strictly complied with—7 J. J. Marsh. 502 ; 6 Dana, 466 ; 12 Mo. 63 ; 7 Dana, 479. It is decided that a guardian must strictly perform his duties, but need not strictly report the same.

In this case there is no evidence of any petition filed by the guardian, or what it contained, except as recited in the order of the court; and the order of the court is defective, as it does not show the land was to be sold alone for the education of the minor, and is void—Beal v. Harmon, 38 Mo. 435. There is no pretence that the land was ever appraised ; and in Robert v. Casey, 25 Mo. 585, the court say the purchaser must see that the law has been complied with until he gets a deed, but afterwards he is not responsible for the dereliction of the guardian.

As the law then stood, it was the duty of the purchaser to see that the Probate Court had ordered a sale of the land to educate the minor ; that the administrator had complied with the law in such sale, and had given him such a deed as the law required. If he failed in these respects he is prejudiced thereby, and the court will not protect him in his

own laches—25 Mo. 593 ; 21 Mo. 598. The order of the court fails to show the purpose of the sale.

In the District Court Judge Clark, in effect, decided that the sale was a bad one, but he agreed to a reversal because he says the defendants had no equity. That may be so or not, but the papers do not present such a case, and no such consideration of it is asked in the pleadings.

Judge Heron ignores all the points except the failure to appraise the property, and decides that the approval of the sale cured the defect, and relies upon the decision of the U. S. Court in Grignon v. Astor, 2 How. 319. This case is over-ruled for our purpose in 19 Mo. 461–2. He only goes upon the hypothesis that an order of approval of sale is like an order adjudging that real estate shall be sold. Previous to the act of 1851 approval of the sale was not necessary, but by that act it became necessary to report the sale at the next term thereafter, with a full report of the proceedings and in-cluding a copy of the advertisement and a certificate of the appraisement verified by affidavit. (See § 32, Stat. of 1845, p. 48.) These are positive requirements that cannot be cured by the approval, unless after the lapse of a long period of time, and when the deed showed by recital that such re-quirements had been complied with. Here the deed was not such as was required by law. (See Acts 1851, p. 218.) Sec. 3 and sec. 5 require that they shall be referred to in apt and appropriate language. When no deed is made, no interest can pass—Wohlein v. Speck, 18 Mo. 563 ; 22 Mo. 310. Then the deed does not convey the interest of the ward, and a guardian can convey none other—21 Mo. 603 ; 6 Conn. 258 ; id. 373, 385 ; 19 Mo. 463. The Supreme Court have decided that a deed not properly acknowledged cannot be recorded or used—38 Mo. 70. This was acknowledged be-fore W. E. Baker, clerk, who had no power to take acknowl-edgments out of term time, if at all—Laws of 1851, p. 210, sec. 10.

The deed fails to recite the order of the court, the adver-

Strouse v. Drennan et als.

tisement, the appraisement, the time, place or terms of the sale, and, instead of conveying the interest of the ward, it conveyed the interest of George Strouse the father, at the time of his death: he could pass no title but that of John M. Strouse at the time of making the deed—Dickerson v. Campbell, 32 Mo. 544.

In this case the decree of the Probate Court is not called in question collaterally. It may have been all right, and the subsquent acts of the guardian insufficient to convey title to the infant's land. An infant could not be divested of his real estate by the common law, and to divest him under the statute it must be strictly complied with, as the purchaser's title comes through that channel only—Calvert v. Godfrey, 6 Beav. 97; Garniston v. Gavit, 9 Law Jur. 78.

The court of chancery has no inherent original jurisdiction to direct the sale of infant's real estate—Rodgers v. Dill, 6 Hill, (N. Y.) 415. The Probate Court of Platte county had no jurisdiction—Acts of 1847, p. 27, & 1849, p. 428.

*Woodson*, for respondents.

I. For the purpose of making sale of the real estate of infants, approving the same, and determining all questions connected therewith, the Probate Court of Platte county was a court of general jurisdiction. It had jurisdiction of the subject matter of this suit, and all of its acts are valid and binding upon the parties, and most clearly cannot be questioned in a collateral proceeding—Frye v. Kimball, 16 Mo. 21; Overton v. Johnson, 17 Mo. 442; Wohlien v. Speck, 18 Mo. 563; 10 Pet. (U. S.) 473; 2 How. (U. S.) 319. We ask the especial attention of the court to the whole of the two last above recited cases—4 Dana, 429; 15 Ohio, 703; 16 U. S. Dig. 309; Wolf v. Robinson, 20 Mo. 459; 20 U. S. Dig. 442, §§ 190, 197, 205.

II. No appeal lies in this case to this or any other court. Under our statute, appeals from the inferior courts to the Supreme Court only lie upon final judgments. There was no final judgment in this case, and the appeal should be dismissed.

WAGNER, Judge, delivered the opinion of the court.

A preliminary question is raised by the respondents' counsel as to whether this court can take cognizance of this case as it now stands. The case was appealed from the Platte Circuit Court, and on a hearing in the District Court the judgment of the Circuit Court was reversed and the cause remanded, and it is now suggested that the judgment of the District Court is not such a final determination as will authorize an appeal. The law provides that, on all final judgments rendered in the District Courts, appeals, or writs of error, may be taken to the Supreme Court. It is true the judgment of the District Court is not a complete and final disposition of the cause, putting it at rest for ever, as is contemplated, and orders further proceedings in another court; nevertheless it may be said to be final so far as the District Court is concerned, where, under a similar law, which declares that every person aggrieved by any final judgment or decision of any Circuit Court, might appeal, &c., a writ of error was sued out from a judgment of the County Court to the Circuit Court, and, upon a trial in the latter court, the judgment of the County Court was reversed and the cause remanded for a new trial. From that decision an appeal was taken to the Supreme Court, and a motion was made to dismiss the appeal on the ground that the judgment was not final; but it was held, that the law was alike applicable to both writs of error and appeals; that the decision in the Circuit Court destroyed the judgment in the court below, and, if it was erroneous, the judgment of reversal should be reversed, the effect of which would be to restore the judgment of the County Court; and that the judgment was final, from which an appeal or writ of error would well lie within the meaning of law. The motion was accordingly overruled—Rankin v. Perry, Adm'r, 5 Mo. 501; Perry v. Alford, 5 Mo. 503. This also seems to be the practice in New York, from which State our judicial system is framed and modelled. Aside from authority, upon principles of reason, we are well

convinced that this is the correct interpretation and clear intention of the law.

A different ruling would produce great injustice and protract litigation indefinitely. By a series of reversals in the intermediate courts, and remanding the cause, the contest would become interminable, and the defeated party would be wholly deprived of the right of having his controversy settled in the court of last resort. We do not think that the law-makers contemplated such a result, or that the law will justly bear such a construction.

The case was ejectment, in the Circuit Court, for the recovery of a piece of land situate in the county of Platte. The plaintiff derived title from his father, who died seized and possessed of the premises, and the land was sold by his guardian by virtue of an order of the Probate Court. The defendants claim the real estate and resist the action under a title acquired by purchase at the guardian's sale. The sale was had under the law of 1851, which prescribes the mode in which guardians shall proceed in selling the real estate of minors, and the cause for which the court is authorized to order the same to be sold. The first section provides, that in all cases where the real estate of minors is ordered to be sold under the provision of the twenty-second section of the act of 1845, concerning guardians, curators, and minors, such sale shall be advertised and conducted in the same manner provided by law for the advertising and conducting sales of real estate of deceased persons made by executors and administrators for the payment of debts. Section second requires that whenever any guardian or curator who should sell any real estate belonging to his ward under the order of any court having competent jurisdiction, he should report such sale to the court in the same manner as executors and administrators were required by law to report sales of real estate made by them for the payment of debts, and such sale, if approved by the court, should be valid to all intents and purposes. The third section prescribes the recitals which should be contained in the deed,

and declares that the guardians and curators, after receiving payment of the purchase money for any real estate sold by them, should make and deliver to the purchaser or purchasers thereof deeds of conveyance for the same, reciting the order of the court, the advertisement, the appraisement and description of the real estate, the time, place and terms of sale, and the payment of the purchase money—which recitals were made *prima facie* evidence of the facts so recited, and conveying to such purchaser or purchasers all the right, title and interest of the ward in the real estate sold.

The twenty-second section of the act concerning guardians and curators, R. C. 1845, to which the above recited act is amendatory, gives the County Court power to order the sale of the real estate of minors for purposes of education only. By the provisions of the law relating to the sales of real estate by executors and administrators, referred to in the act of 1851, it was made necessary that, before any sale took place, the same should be appraised by three disinterested householders of the county in which the same was situated; that it should be advertised in a certain prescribed manner, and that at the next term of the County Court after such sale the executor or administrator should make a full report of his proceedings, with the certificate of appraisement, and a copy of the advertisement, which report should be verified by affidavit, &c.; and if such report and proceedings of the executor or administrator were not approved by the County Court, the proceedings should be void, and the court might order a new sale; but if such report was approved, the sale should be valid. The record shows that the guardian petitioned the Probate Court for an order to sell the same to provide for the support and education of his ward; it is not shown that there ever was any appraisement, and the fact appears that there was none; and it also appears by the record that the guardian reported his proceedings to the Probate Court on the day on which the sale took place, and the court entered its order of approval on the same day, being of the same term. The position now as-

sumed, and the ground relied on by the plaintiff is, that the guardian wholly failed to comply with the law, and that the sale passed no title to the purchaser. The Circuit Court found for the plaintiff on this theory, and the District Court reversed its judgment.

Courts have gone great lengths to uphold judicial sales, and where real estate has been sold by order of a court having jurisdiction, the general rule is that the title derived in consequence of such sale cannot be attacked in a merely collateral proceeding, but will be good until set aside, or divested, in a direct action for that purpose. This rule is necessary to protect innocent purchasers and give repose to titles. Our County and Probate Courts are not courts of general jurisdiction according to the common law meaning of the term in which such liberal intendments are indulged, for they have only limited jurisdiction, which is specially conferred on them by statute ; but when they act in a matter in which they clearly have jurisdiction, the most liberal intendments and presumptions will be extended in support of their proceedings. The case of Grignon's Lessee v. Astor et al., 2 How. 319, has gone further than any case in this country in upholding judicial sales of real estate. In that case it did not appear that the notice required by statute had been given by the administrator on the presentation of his petition for sale ; but the Supreme Court said, that, after the court of original jurisdiction had passed on the subject, they would indulge the presumption that the requisite steps were taken. There a great length of time had elapsed before the proceedings were commenced to impeach the sale, and the law is always favorably inclined to support judgments when sought to be attacked and destroyed in a remote period after rendition, especially when assailed for omissions to show evidence which is not strictly required to be entered of record. But this court has not gone to the extent of the ruling in Grignon v. Astor, and has held, that, in sales under the statute by guardians and administrators, the acts required to be done must be complied with, and that it is the duty of the pur-

chaser to see that the proceedings of the court and the acts of the person making the sale are in conformity to law up to the date of sale—Vallé v. Fleming, 19 Mo. 454; Robert v. Casey, 25 Mo. 584.

The petition upon which the court ordered the sale stated that it was necessary that the real estate should be sold to furnish means for the support and education of the ward. The law did not empower or authorize the court to order the sale of real estate for the support and maintenance of the minor, and this part of the prayer in the petition was void and gave no jurisdiction—Beal v. Harmon, 38 Mo. 435. But the court had the right to order the sale for purposes of education, and we should be justified in presuming that the court acted within the pale of its jurisdiction and made the order for that cause.

It here appears that no appraisement was made, and the law expressly requires, that, before the guardian shall sell any real estate, he shall have it appraised by three disinterested housholders of the county where the land lies, and at the next term of the court after such sale he shall make full report of his proceedings, with the certificate of appraisement. This is an absolute requirement of the law, and it should be obeyed even if the reason of it was not plainly perceived. But it was enacted for good and substantial reasons: it furnishes evidence to enlighten the judgment of the court in the approval or rejection of the sale. The appraisers must be disinterested householders acting under the sanction of an oath; no evidence could be more satisfactory. It was the intention of the law to supply this medium of proof, and prevent the sacrifice to which the estate of minors might be exposed if courts were left to rely upon the interested representations of sharks and speculators as to value. The report was confirmed at the term at which the sale was made; in fact, on the very day of the sale. The court had no authority to proceed to act in the premises at that time, no more than a court would be to render final judgment at the return term of a writ, when the law declares that it could

Strouse v. Drennan et als.

only be rendered at the second term. By postponing the time for action as to the approval or rejection of the report to the term next after the sale, an opportunity is afforded to scruti-nize its fairness, and see that justice has been done to all parties ; and if the proceedings have been irregularly con-ducted and the property sold below its fair value, objections can be made, and the sale set aside.

To affirm the validity of the sale in this instance would be to sanction the violation of a law which is founded in justice and wise policy ; nor do we consider that the views above enunciated operate harshly on purchasers, or tend to im-pair the validity of titles. It is the duty of a purchaser, when he is about to buy real estate sold by authority of courts, to look to the order of the court and see whether there is authority to sell, and if so, what are the conditions and restrictions incident to its exercise. He must see that the terms, on which the power to sell depends, have been complied with ; when this is done, he will be safe in buying, and his title will not be destroyed or vitiated by anything which takes place afterwards. The deed made by the guardian to the purchaser at the sale contains none of the statutory re-citals and is informal and defective ; but as the case must be reversed, for the reason given above, we need not con-sider its effect.

The judgment of the District Court is reversed. The other judges concur.

### Petition for Rehearing by Respondent.

WAGNER, Judge, delivered the opinion of the court on the petition for rehearing.

The counsel for the defendants has filed his petition for a rehearing in this cause, and for a modification of the opinion previously delivered. It is not contended that the judgment is wrong, for the deed made by the guardian is admittedly defective and incapable of conveying any title ; but it is in-sisted that there is error in that part of the opinion which

intimates that it is the duty of the purchaser to see that the law has been substantially complied with, and that the court having acquired jurisdiction, all its acts are to be deemed valid till reversed by appeal or writ of error in some superior tribunal. That this is correct in common law courts exercising jurisdiction according to the common law rules, will not for a moment be disputed; and our County and Probate Courts being courts of record, and established by law with certain defined powers, will have every liberality and indulgence extended.to their proceedings when they act within the limits of their jurisdiction. When we see plainly that jurisdiction has attached, we shall be warranted in presuming that their judgments are correct, although an exact conformity to law does not appear in every respect; but when a non-compliance with law expressly and positively appears on the face of the record, can or ought an intendment to uphold their proceedings be indulged? This court has not gone to the extent of some courts in imparting validity to the judgments and proceedings of County Courts in guardians and administrators' sales, whilst it has been much more liberal than others. In New York it is the settled rule of decision in the courts in relation to sales made by order of their surrogates, that, before any title passes on such sales, a strict compliance with all the requirements of the law should be shown, and the courts of that State have been very vigilant and astute in detecting defects. Such a course is calculated to shake the confidence in the title acquired under such sales, and we are not inclined to follow it, but prefer to give to such sales very liberal presumption in support of their validity. But when the record in apparent and unmistakable terms shows that there has been a failure to comply with essential requisites of the law, we think it would be going entirely to far to say that we could in no case examine into the matter.

In Frye v. Kimball, 16 Mo. 21, Mr Justice Ryland said, *arguendo*, " We will not disturb the title to real property acquired under sales made in pursuance of the orders of the

court, and we will not look with a scrutinizing eye into the proceedings of such courts to find defects in order to set aside sales of real estate sanctioned and ordered by such courts." The case did not call for any expression of opinion, but we do not understand the judge as holding that a deed would confer a complete title regardless of all defects that might be apparent in the record. Overton v. Johnson, 17 Mo. 442, merely decides that the accounts, lists, inventries, and appraisements, which the statute requires to be filed with the petition for the sale of a decedent's estate, are not necessary to give the courts jurisdiction, and that a failure to file them would not render the sale void. In this opinion we entirely concur.

In Speck v. Wohlein 22 Mo. 310, it was insisted that the approval of a sale could not be questioned in a collateral proceeding; but the court said, that, had the approval been made at the term required by law, there might have been some weight in the proposition; the party affected could then have taken his appeal. But the objection to the proceeding was that the approval was made when the party was not in court, and not required to be there; and the appeal had to be taken at the same term of the approval, and the party not having notice and not being present, could not take his appeal. It is true that the judge in that case did not intimate what effect an approval made under such circumstances would have if acted upon and consummated by a deed.

In Roberts v. Casey, 25 Mo. 584, Judge Napton, in speaking of the duties and rights of a purchaser at a guardian's sale, says that the purchaser cannot be held responsible for the acts of the guardian; but he adds, " undoubtedly where a title cannot be consummated without certain acts being done and an approval by the court of those acts, the case is different. The sales of administrators under the statute are of this character." And he says that the purchaser must look to the order of the court, and see whether there is authority to sell, and if so, how far that authority is restricted,

and that the order on which the power to sell depends has been complied with.

The statute required that the sale should be approved at the next term after the land was sold; this was the crowning act, and till such approval took place at the proper time there could be no valid sale; and until such report and confirmation no appeal could be taken, for no notice was given, and no person was in court to act. The law on this point is well examined in Vallé v. Fleming.

The other judges concurring, the motion for a rehearing will be overruled.